**CAPITAL CASE: EXECUTION DECEMBER 11, 2025 AT 10:00 A.M.**

**No. 25-6095**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

HAROLD WAYNE NICHOLS,

*Plaintiff-Appellant,*

v.

JONATHAN SKRMETTI, ET AL.,

*Defendants-Appellees,*

On appeal from the United States District Court
for the Middle District of Tennessee
No. 3:25-cv-442

**Response of Appellees in Opposition
to Motion for Stay of Execution and
Motion for Preliminary Injunction**

Jonathan Skrmetti
*Attorney General & Reporter*

J. Matthew Rice
*Solicitor General*

Nicholas W. Spangler
*Special Counsel for
Criminal Justice*

Cody N. Brandon
*Deputy Attorney General*

Office of the Tennessee Attorney
General and Reporter
P.O. Box 20207
Nashville, TN 37202
Cody.Brandon@ag.tn.gov
(615) 532-7400
*Counsel for Appellees*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....................................................................... 1

BACKGROUND ......................................................................... 2

LEGAL STANDARD ................................................................ 5

ARGUMENT .............................................................................. 5

I.    Nichols's Tactical Delay Is Reason Enough to Deny a Stay. ...................................................................................... 5

II.   Nichols Is Unlikely to Succeed on the Merits. ........................... 7

    A. Nichols has no constitutional right to force Tennessee to agree to a stay of execution. ........................... 7

    B. Nichols's facial challenge to Tennessee's mainstay execution method is untimely and meritless. ................... 12

    C. Nichols didn't show his unique physical conditions would cause him to suffer cruelly and unusually. ............................................................................ 24

III. Equity Weighs Heavily Against a Stay. ................................... 25

CONCLUSION ......................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armour v. Indianapolis,*
      566 U.S. 673 (2012) ............................................................... 13

*Arthur v. Cmm'r,*
      840 F.3d 1268 (11th Cir. 2016) ........................................... 26

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) ............................................................... 13

*Barr v. Lee,*
      591 U.S. 979 (2020) (per curiam) ............................... *passim*

*Bartlett v. Washington,*
      793 F.App'x 403 (6th Cir. 2019) ....................................... 15

*Baze v. Rees,*
      553 U.S. 35 (2008) ....................................................... *passim*

*Bench Billboard Co. v. Cincinnati,*
      675 F.3d 974 (6th Cir. 2012) .............................................. 14

*Bertovich v. Village of Valley View,*
      431 F.App'x 455 (6th Cir. 2011) ....................................... 12

*In re Black,*
      148 F.4th 375 (6th Cir. 2025) ............................................ 30

*Brown v. Tidwell,*
      169 F.3d 330 (6th Cir. 1999) ....................................... 14, 19

*Bucklew v. Precythe,*
      587 U.S. 119 (2019) ..................................................... *passim*

*Calderon v. Thompson,*
      523 U.S. 538 (1998) .................................................... 30, 31

*Cooey (Bueuke) v. Strickland*,
  604 F.3d 939 (6th Cir. 2010)................................................................ 19

*Cooey v. Strickland*,
  479 F.3d 412 (6th Cir. 2007)................................................................ 18

*Del Marcelle v. Brown Cnty.*,
  680 F.3d 887 (7th Cir. 2012)................................................................ 16

*Douglas Asphalt v. Qore, Inc.*,
  541 F.3d 1269 (11th Cir. 2008)............................................................ 16

*Engquist v. Oregon Dep't of Agr.*,
  553 U.S. 591 (2008) ................................................................... 15, 16

*Farmer v. Brennan*,
  511 U.S. 825 (1994)............................................................................ 28

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
  2021 WL 164918 (D.C. Cir. Jan. 13, 2021) ........................................ 24

*In re Fed. Bureau of Prisons Execution Protocol Cases*,
  471 F.Supp.3d 209 (D.D.C. 2020)....................................................... 23

*Getsy v. Strickland*,
  577 F.3d 309 (6th Cir. 2009)................................................................ 18

*Gissendaner v. Comm'r*,
  779 F.3d 1275 (11th Cir. 2015)............................................................ 22

*Glossip v. Gross*,
  576 U.S. 863 (2015) ........................................................ 19, 20, 21, 29

*Gomez v. U.S. Dist. Court*,
  503 U.S. 653 (1992) ............................................................................. 5

*Heike v. Guevara*,
  519 F.App'x 911 (6th Cir. 2013) ......................................................... 15

*Hill v. McDonough*,
  547 U.S. 573 (2006) ..................................................................... 9, 30

iv

*Irick v. Ray,*
    628 F.3d 787 (6th Cir. 2010) .............................................................. 17

*State ex rel. Johnson v. Blair,*
    628 S.W.3d 375 (Mo. 2021) (en banc) ................................................ 22

*Jones v. Comm'r,*
    811 F.3d 1288 (11th Cir. 2016) .......................................................... 22

*Lloyd v. Cannon,*
    2023 WL 7182130 (6th Cir. 2023) ..................................................... 14

*Mich. Coal. of Radioactive Material Users, Inc. v.
Griepentrog,*
    945 F.2d 150 (6th Cir. 1991) ................................................................ 9

*Nelson v. Campbell,*
    541 U.S. 637 (2004) ...................................................................... 10, 30

*Nichols v. Tennessee,*
    513 U.S. 1114 (1995) .......................................................................... 17

*Novotny v. Tripp Cnty.,*
    664 F.3d 1173 (8th Cir. 2011) ............................................................ 16

*In re Ohio Execution Protocol Litigation,*
    946 F.3d 287 (6th Cir. 2019) ......................................................... 22, 29

*Owens v. Hill,*
    758 S.E.2d 794 (Ga. 2014) ................................................................. 22

*Pardo v. Palmer,*
    500 F.App'x 901 (11th Cir. 2012) ...................................................... 18

*Patel v. Lynch,*
    830 F.3d 353 (6th Cir. 2016) .............................................................. 24

*Price v. Dunn,*
    587 U.S. 999 (2019) ........................................................................... 10

*Rapp v. Dutcher,*
    557 F.App'x 444 (6th Cir. 2014) .................................................. 12, 15

*Reform Am. v. Detroit*,
   37 F.4th 1138 (6th Cir. 2022) ............................................................ 14

*Rhines v. Weber*,
   544 U.S. 269 (2005) ............................................................................ 9

*Rinard v. Luoma*,
   440 F.3d 361 (6th Cir. 2006) .......................................................... 19

*State v. Adkins*,
   725 S.W.2d 660 (Tenn. 1987) ........................................................... 7

*State v. Nichols*,
   877 S.W.2d 722 (Tenn. 1994) ................................................. 5, 6, 7

*Thomas v. Copeland*,
   758 F.App'x 377 (6th Cir. 2018) ..................................................... 17

*Towery v. Brewer*,
   672 F.3d 650 (9th Cir. 2012) .......................................................... 16

*TriHealth, Inc. v. Bd. of Comm'rs*,
   430 F.3d 783 (6th Cir. 2005) .......................................................... 11

*United States v. Green*,
   654 F.3d 637 (6th Cir. 2011) .................................................... 12, 14

*United States v. Moore*,
   543 F.3d 891 (7th Cir. 2008) .......................................................... 16

*West v. Schofield*,
   519 S.W.3d 550 (Tenn. 2017) ........................................ 7, 18, 19, 21

*Whitaker v. Collier*,
   862 F.3d 490 (5th Cir. 2017) ..................................................... 18, 22

*Workman v. Bell*,
   484 F.3d 837 (6th Cir. 2007) .......................................................... 32

*Zink v. Lombardi*,
   783 F.3d 1089 (8th Cir. 2015) ........................................................ 22

**Statutes**

Tenn. Code Ann. §40-23-114 (Supp. 1998) .......................................... 7, 17

Tenn. Code Ann. §40-23-114(d) ............................................................ 25

**Other Authorities**

Eric Egan, *Murder Victim's Sister Will Fly to Tennessee to
  "Make Sure This Evil Man Dies,"* WKRN.com, Oct. 15,
  2020 ..................................................................................................... 31

Fed. R. App. P. 8 .................................................................................. 9

Tenn. Const. art. I, §35 ........................................................................ 31

## INTRODUCTION

In 1988, Harold Nichols broke into 20-year-old Karen Pulley's home, brutally raped her, and then bludgeoned her to death. He admitted it, pleading guilty to his horrific crimes—as well as the rapes of four other women. As the Tennessee Supreme Court put it, Nichols "is undoubtedly among the worst of the bad." *State v. Nichols*, 877 S.W.2d 722, 739 (Tenn. 1994).

Now, after nearly 35 years of litigation, Nichols asks this Court to further delay his execution. He presents a trio of arguments: (1) Equal Protection requires identical treatment of different defendants; (2) the use of pentobarbital—a "mainstay" in executions—violates the Eighth Amendment; and (3) using that mainstay will be uniquely painful for him. None of these theories have merit. And there is no basis for stopping Nichols's execution. The State's "strong interest" in finality and the Pulley family's right to closure demand a stop to Nichols's "abusive delay" tactics through "last-minute attempts to manipulate the judicial process." *Gomez v. U.S. Dist. Court*, 503 U.S. 653, 654 (1992).

"Last-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). This isn't the exception.

1

## BACKGROUND

### A.    Factual Background

In 1988, Nichols broke into the house of 20-year-old Karen Pulley. *Nichols*, 877 S.W.2d at 726. He grabbed a two-by-four and headed upstairs to Pulley's bedroom. *Id*. There, Nichols "tore her undergarments from her and violently raped her." *Id*. While raping her, Nichols struck Pulley on the head twice with the two-by-four. *Id*. Pulley continued to struggle with Nichols after he raped her, so he repeatedly used the two-by-four to strike her head "with great force." *Id*. Nichols left Pulley for dead, and she laid in a pool of her own blood until her roommate discovered her the next morning. *Id*. Pulley died the next day. *Id*.

Evidence later showed that Nichols roamed Chattanooga at night searching for vulnerable women. *Id*. By the time of his trial for Pulley's murder, Nichols had been charged with the aggravated rape or attempted rape of twelve women besides Pulley, *id*. at 726 n. 2, and convicted for the aggravated rape of four other women. *Id*. at 726.

**B.    Procedural Background**

Nichols pleaded guilty to Pulley's rape and murder. During sentencing, he testified that he had a "strange energized feeling" he couldn't resist and that he would've continued to violently attack women if he hadn't been arrested. *Id*. at 727. The jury sentenced Nichols to death. *Id*.

After Nichols's sentencing, Tennessee adopted lethal injection as a method of execution in 1998, Tenn. Code Ann. §40-23-114 (Supp. 1998), because it was widely touted as a "more humane" alternative to "electrocution." *State v. Adkins*, 725 S.W.2d 660, 664 (Tenn. 1987). Two years later, it became the State's default execution method and has remained so ever since. Tenn. Code Ann. §40-23-114 (Supp. 2000). In 2013, Tennessee adopted a lethal injection protocol that caused sedation and death through the injection of pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017). The State later adopted a three-drug lethal injection protocol but returned to a single-drug pentobarbital

protocol in January 2025. Throughout his decades of direct and collateral review, Nichols never challenged Tennessee's execution protocol.

Nichols was set for execution in 2020 but obtained a reprieve during the COVID-19 pandemic. On March 3, 2025, the Tennessee Supreme Court reset Nichols's execution for December 11, 2025. Six weeks later, Nichols filed a method-of-execution suit challenging Tennessee's lethal injection protocol and raising other collateral issues related to his execution. Compl., R.1, 1-58.[1] The State moved to dismiss. Nichols opposed dismissal, in part. MTD-Resp., R.37, 438 n.5. For seven months, that response was Nichols's only substantive filing. Nichols never requested a case management conference, never made initial disclosures, never conducted discovery, and *never moved for injunctive relief*.

A month before his execution, Nichols finally sought a stay of execution. PI-Mot., R.47, 494-96. The district court never ruled on that motion, instead dismissing the case on November 26. Ord., R.56, 1608. Nichols appealed on December 1 but waited a week to seek a stay from this Court.

---

[1] All district court record ("R.#") pincites refer to the "PageID" numbers in the ECF file stamps for the district court's docket, No. 3:25-cv-442.

4

## LEGAL STANDARD

To obtain a stay or injunction under Fed. R. App. P. 8(a), an applicant must show the same four factors. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Those are: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) that the stay won't cause substantial harm to others; and (4) that the stay serves the public interest. *Id.*

## ARGUMENT

### I.    Nichols's Tactical Delay Is Reason Enough to Deny a Stay.

"[T]he last-minute nature of an application that could have been brought earlier, or an applicant's attempt at manipulation, may be grounds for denial of a stay." *Bucklew*, 587 U.S. at 150 (cleaned up). "[A] stay of execution is an equitable remedy," and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

It is well known that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). "[I]t is the same strategy adopted by many death-row inmates with an

impending execution: bring last-minute claims that will delay the execution, no matter how groundless." *Price v. Dunn*, 587 U.S. 999, 1008 (2019) (Thomas, J., concurring in denial of certiorari). And federal courts apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

That presumption should foreclose Nichols's request for a stay a mere week before his execution. Nichols waited decades after Tennessee adopted lethal injection to challenge that method. Even after belatedly suing this year, he could have immediately requested a stay or injunction. Instead, he let his case languish for seven months, waiting until one month before his execution to seek a stay. Nichols's pattern of delay continues now. After the district court dismissed his case, Nichols waited a week to ask this Court for a stay—leaving the State 24 hours to respond. "The proper response to this maneuvering is to deny [Nichols's] meritless request[] expeditiously." *Price*, 587 U.S. at 1008.

## II.    Nichols Is Unlikely to Succeed on the Merits.

### A.    Nichols has no constitutional right to force Tennessee to agree to a stay of execution.

Nichols claims it violates equal protection to execute him while two other death row inmates, Terry King and Donald Middlebrooks, enjoy stays.  King and Middlebrooks filed lawsuits challenging Tennessee's execution protocol in 2018 and 2019.  *King v. Strada*, No. 3:18-cv-01234 (M.D. Tenn.); *Middlebrooks v. Strada*, No. 3:19-cv-01139 (M.D. Tenn.).  The cases were consolidated and, after Governor Lee paused executions through 2022, TDOC moved to stay the proceedings.  Along with the stay, the parties also agreed that, during the life of those suits, King and Middlebrooks would not be executed.  Nichols claims that the Equal Protection Clause entitles him to the same agreement.  He's wrong.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." It prohibits governmental discrimination that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).

Nichols proceeds under the last theory as a class of one. That theory fails because (1) he cannot negate Tennessee's rational bases for refusing to stay his execution, (2) he didn't show he is similarly situated in all material respects to King and Middlebrooks, and (3) his class-of-one theory isn't viable in the discretionary litigation decision context.

### 1. Tennessee can rationally refuse to enter a litigation agreement to stay Nichols's execution.

Nichols had to plead facts showing "there is no rational basis for the difference in [Tennessee's] treatment" of him and King and Middlebrooks. *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). The district court correctly found Nichols failed to do so. "There is no allegation in the Complaint that Defendants lack a rational basis for not entering into the Agreement with [Nichols]." Mem., R.55, 1570. And there is no "factual matter ... that plausibly suggest the lack of a rational basis." *Id*. Nichols's complaint contains neither "enough factual matter to plausibly show there was not any conceivable basis that rationally supported" Tennessee's litigation positions, *Rapp v. Dutcher*, 557 F.App'x 444, 449-50 (6th Cir. 2014), or "specific information" showing Tennessee "lack[ed] a rational basis" to refuse to stay his execution. *Bertovich v. Village of Valley View*, 431 F.App'x 455, 458 (6th Cir. 2011). Nichols

suggests the district court should have "infer[red]" that Nichols alleged there was no rational basis because he "put Defendants on notice that he had the burden" to negate a rational basis and alleged "a violation of the Equal Protection Clause." Stay-Br., Doc.10, 11-12. But Nichols's "formulaic recitation of the elements" are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Without allegations, the district court could "not ... assume that there is no rational basis." Mem., R.55, 1571 n. 24.

Plus, it is easy to "conceiv[e]," *Armour v. Indianapolis*, 566 U.S. 673, 681 (2012), the rationale for entering the agreements with King and Middlebrooks. Mem., R.55, 1570-71, n.24. When Defendants entered those agreements, they didn't know (1) the duration of the pause on executions, (2) the results of the independent investigation, (3) whether the execution protocol would be amended, (4) what changes would be made, and (5) what legal challenges an amended protocol might face. Staring down continued litigation and potentially intrusive discovery over a soon-to-be-changed protocol, there was a rational reason to enter the agreements to avoid a heavy litigation burden. *Armour*, 566 U.S. at 682.

9

### 2. Nichols isn't similarly situated to King and Middlebrooks.

Nichols also failed at the first step of his Equal Protection claim. *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999). Nichols had to show "he has been intentionally treated differently from others similarly situated." *Green*, 654 F.3d at 651 (6th Cir. 2011); *Lloyd v. Cannon*, 2023 WL 7182130, at *4 (6th Cir. 2023). But Nichols failed to show he and his comparators are "alike in all relevant respects." *Reform Am. v. Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022).

The district court found Nichols pleaded he was similarly situated to King and Middlebrooks because they all "sit on death row with pending litigation." Mem., R.55, 1570. But that isn't all the "relevant similarity." *Bench Billboard Co. v. Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012). Nichols pleaded that King's and Middlebrooks's delays of their executions stemmed entirely from a 2022 agreement in their pending litigation. Compl., R.1, 2-3. But he doesn't allege that he had litigation pending that Tennessee refused to compromise on the same terms. So he doesn't show his situation presented the same risks and benefits to Tennessee that King's and Middlebrooks's did. Indeed, Nichols's complaint shows he is being treated exactly like the other inmates he is similarly situated

10

to: nobody else received an agreement like King's and Middlebrooks's. Compl., R.1, 29; Mem., R.55, 1571 n.24. So Nichols fails at the first step of his class-of-one claim.

### 3. Nichols has no viable class-of-one claim to challenge discretionary decision-making.

Nichols's claim also fails because he cannot pursue a class-of-one challenge to discretionary litigation positions. "There are some forms of state action ... which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008). In those contexts, "treating like individuals differently is an accepted consequence of the discretion granted." *Id.*

This Court has already recognized that *Engquist* outright forecloses class-of-one claims in certain contexts. *Bartlett v. Washington*, 793 F.App'x 403, 407-08 (6th Cir. 2019) (employment); *Heike v. Guevara*, 519 F.App'x 911, 922 (6th Cir. 2013) (coaching). That is because *Engquist*'s holding "strongly suggests that a 'class-of-one' equal protection theory is unavailable" when "discretionary decision-making" is involved. *Rapp v. Dutcher*, 557 F.App'x 444, 449 (6th Cir. 2014). Other circuits have reached the same conclusion, including for execution-related decisions.

11

*Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012); *see Novotny v. Tripp Cnty.*, 664 F.3d 1173, 1179 (8th Cir. 2011) (enforcement of weed ordinances); *Douglas Asphalt v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008) (contractors); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (prosecutorial and sentencing decisions). What unites these cases "is the impediment to efficiency in government" created by rehashing discretionary decisions "guided unavoidably by subjective, individualized factors that are bound to create disparate treatment." *Del Marcelle v. Brown Cnty.*, 680 F.3d 887, 898 (7th Cir. 2012).

Tennessee's litigation strategy "rest[s] on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 553 U.S. at 604. "Allowing a challenge based on" Tennessee's decisions in litigation against a particular person "would undermine the very discretion that such state officials are entrusted to exercise." *Id.* at 603.

## B.    Nichols's facial challenge to Tennessee's mainstay execution method is untimely and meritless.

Nichols claims it violates the Eighth Amendment to execute anyone with pentobarbital. Compl., R.1, 34-37. But he brought this claim too late. And pentobarbital executions comply with the Eighth Amendment anyway.

12

### 1.    Nichols's facial challenge is untimely.

The applicable Tennessee limitations period for §1983 actions is one year and begins to run when a plaintiff "knows or has reason to know of the injury." *Thomas v. Copeland*, 758 F.App'x 377, 380-81 (6th Cir. 2018). For method-of-execution claims, the clock starts on the latter of "the conclusion of direct review in the state court" or "when a particular method of execution is adopted by the state." *Irick v. Ray*, 628 F.3d 787, 789 (6th Cir. 2010).

The clock has run on Nichols's facial challenge.  Nichols completed direct review of his death sentence in 1995, *Nichols v. Tennessee*, 513 U.S. 1114 (1995), and Tennessee law made lethal injection his default method of execution in 2000, Tenn. Code Ann. §40-23-114 (Supp. 2000).  Nichols had until 2001 to bring his claim.

Nichols counters that the clock reset in January 2025.  That's wrong.

First, even assuming that Nichols's claim accrued when Tennessee moved to using pentobarbital—as opposed to when it selected lethal injection as its method of execution—that just means Nichols's claim accrued in 2013 when Tennessee first began using pentobarbital.  *See*

13

*West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017).  Thus, even under
Nichols's reasoning, he is at least one decade too late.

Second, this Court's precedents establish that changes in the
chemical used for lethal injection do not reset the limitations period for a
claim like Nichols's.  This Court has rejected arguments that the
"alteration of the precise execution protocol," *Cooey v. Strickland*, 479
F.3d 412, 418, 424 (6th Cir. 2007), or "particular application of the lethal-
injection method," *Getsy v. Strickland*, 577 F.3d 309, 312 (6th Cir. 2009),
give rise to new claims.  Changing the chemicals used to carry out lethal
injection likewise doesn't cause a new method-of-execution claim to
accrue.

Nichols suggests his claim would be timely in the Eleventh Circuit,
Stay-Br., R.10, 23-24, but that court has rejected the argument that
swapping the chemicals used to carry out an execution constitutes a
substantial change causing a new claim to accrue.  *Pardo v. Palmer*, 500
F.App'x 901, 904 (11th Cir. 2012); *see Whitaker v. Collier*, 862 F.3d 490,
495 (5th Cir. 2017) (holding switch from manufactured to compounded
pentobarbital didn't reset statute of limitations).  Nichols also points to a
stray comment about the limitations period in the procedural background

14

of *Cooey (Bueuke) v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010).  But accrual wasn't present as an issue in that appeal so it does not "constitute precedent."  *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006).

If Nichols feared the suffering he alleges that lethal injection generally and pentobarbital specifically will induce, he could have sought to vindicate his supposed right not to be executed with pentobarbital in 2013, when nearly three dozen other inmates did.  *West*, 519 S.W.3d at 552 n.1.  The district court correctly decided that the time for Nichols's facial challenge has long since passed.

### 2. Nichols didn't show that the use of pentobarbital is cruel and unusual.

Timeliness aside, Nichols also failed to establish an Eighth Amendment claim.  *Brown*, 169 F.3d at 332.

The Eighth Amendment does not "demand the elimination of essentially all risk of pain in executions."  *Glossip v. Gross*, 576 U.S. 863, 869 (2015).  Pain occurring by "accident or as an inescapable consequence of death," for instance, isn't "cruel and unusual."  *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality op.).  Hanging was the predominant method of execution at the Founding and for decades thereafter—even though "[m]any and perhaps most hangings were evidently painful for the

15

condemned person because they caused death slowly." *Bucklew*, 587 U.S. at 132 (citation omitted). That pain was "unfortunate" but not "cruel and unusual." *Id.* That constitutional language refers to "long disused (unusual) forms of punishment that intensified the sentence of death with a (cruel) superaddition of terror, pain, or disgrace," like "disemboweling, quartering, public dissection, and burning alive." *Id.* at 130, 133 (cleaned up). The Supreme Court "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Bucklew*, 587 U.S. at 133.

Challengers thus face an "exceedingly high bar" when asserting method-of-execution claims. *Barr v. Lee*, 591 U.S. 979, 980 (2020) (per curiam). First, an inmate must establish that a given method "presents a risk that is *sure or very likely* to cause serious illness and needless suffering and give rise to sufficiently imminent dangers." *Glossip*, 576 U.S. at 877 (cleaned up). That means a "wanton exposure to objectively intolerable risk" and "not simply the possibility of pain." *Baze*, 553 U.S. at 61-62 (cleaned up).

Second, the inmate must "show a feasible and readily implemented alternative method of execution that would significantly reduce a

substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 587 U.S. at 134. "A minor reduction in risk is insufficient; the difference must be clear and considerable." *Id.* at 143. Further, a challenger must establish that the State "could carry ... out" the alternative method "'relatively easily and reasonably quickly.'" *Id.* at 141 (citation omitted).

Nichols does neither.

**1.** Pentobarbital isn't "sure or very likely to cause ... needless suffering," *Baze*, 553 U.S. at 50. Pentobarbital causes "a quick and complete loss of consciousness" and then works to "repress the brain's respiratory impulses, causing the body to become oxygen deficient and resulting in the cessation of cardiac activity." *West*, 519 S.W.3d at 550, 556-557, 560-61. Indeed, the Supreme Court recognizes that "pentobarbital ... can reliably induce and maintain a comalike state that renders a person insensate to pain." *Glossip*, 576 U.S. at 870-71. For that reason, the "single-dose pentobarbital" protocol has "been repeatedly invoked by prisoners as a *less* painful and risky alternative to the lethal-injection protocols of other jurisdictions." *Barr*, 591 U.S. at 980 (emphasis added).

17

Given its effectiveness, pentobarbital "has become a mainstay of state executions." *Id*. As of 2020, it has "been used to carry out over 100 executions, without incident." *Id*. And its use has been upheld by the Supreme Court, federal circuit courts, and several state courts of last resort. *See, e.g., Bucklew*, 587 U.S. at 119; *Whitaker*, 862 F.3d at 497-99; *Jones v. Comm'r*, 811 F.3d 1288, 1296 (11th Cir. 2016); *Zink v. Lombardi*, 783 F.3d 1089, 1098-1101 (8th Cir. 2015); *Gissendaner v. Comm'r*, 779 F.3d 1275, 1283 (11th Cir. 2015); *State ex rel. Johnson v. Blair*, 628 S.W.3d 375, 388-90 (Mo. 2021) (en banc); *Owens v. Hill*, 758 S.E.2d 794, 802-03 (Ga. 2014).

Nichols claims pentobarbital raises a risk of pulmonary edema. Compl., R.1, 36-37; Stay-Br., Doc.10, 6. But this Court has already held that "pulmonary edema" "looks a lot like the risks of pain associated with hanging, and indeed may present fewer risks in the typical lethal-injection case." *In re Ohio Execution Protocol Litigation*, 946 F.3d 287, 289-90 (6th Cir. 2019). So any pain attending pulmonary edema isn't "severe" enough to be "constitutionally cognizable." *Id*. at 290.

And Nichols's proffered expert testimony changes nothing. The Supreme Court has already found essentially the same proof doesn't

warrant an injunction. In *Barr*, inmates with impending executions sought injunctive relief while they litigated Eighth Amendment challenges to the federal government's single-drug pentobarbital protocol. *In re Fed. Bureau of Prisons Execution Protocol Cases*, 471 F.Supp.3d 209 (D.D.C. 2020). The district court considered proof from the same two experts involved in this case: Dr. Van Norman and Dr. Antognini. The district court accredited Dr. Van Norman's opinion and granted an injunction based on the inmates' likelihood of success on the merits of their claim that the federal protocol would cause severe pain. *Id*. at 219, 225. But the Court vacated the injunction, despite Dr. Van Norman's declarations that pentobarbital causes "flash pulmonary edema." *Barr*, 591 U.S. at 981. The Court noted that the government "ha[d] produced competing expert testimony of [their] own, indicating that any pulmonary edema occurs only after the prisoner has died or been rendered fully insensate." *Id*. at 981. The Court therefore concluded the inmates had "not made the showing required to justify last-minute intervention by a Federal Court." *Id*.

This Court should reach the same conclusion here. Like the inmates in *Barr*, Nichols offers only competing expert testimony.

Whereas Dr. Van Norman attested to a risk of pulmonary edema while Nichols is conscious, PI-Mot. Ex. 1, R.48-1, 522-66, the State's expert, Dr. Antognini, offered a contrary opinion. PI-Resp. Ex. 9, R.52-9, 1207-23. Such "'competing expert testimony' on the factual issues that undergird [Nichols's] method-of-execution challenge," is insufficient to "'to justify last-minute intervention.'" *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 2021 WL 164918, at *4 (D.C. Cir. Jan. 13, 2021).

Nichols's other contentions do not counsel in favor of a different result. His claims that Byron Black survived a lethal dose of pentobarbital are false. PI-Resp. Ex. 9, R.52-9, 1220-21. And his only purported evidence regarding a firing squad came in the form of an expert report appended as an exhibit to his stay reply, unmentioned, a week before his execution. PI-Reply Ex. 7, R.54-7, 1350-69. That's not just gamesmanship; it's waiver. *Patel v. Lynch*, 830 F.3d 353, 357 n.1 (6th Cir. 2016).

**2.** Nor does Nichols "show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 587 U.S. at 134.

Nichols suggests that, instead of pentobarbital, Tennessee should use a firing squad or have someone shoot a single bullet in the back of his head. Compl., R.1, 25-28. The district court correctly rejected those proposals.

*Neither alternative is feasible and readily implemented.* An inmate's alternative must be "not just theoretically 'feasible' but also 'readily implemented.'" *Bucklew*, 587 U.S. at 141. That means the State must be able to "carry it out relatively easily and reasonably quickly." *Id*. An inmate need not choose a method "presently authorized by a particular State's law." *Id.* at 140. But "existing state law might be relevant." *Id.*

Under this framework, the district court couldn't "find it plausible that either method ... feasible and readily implemented." Mem., R.55, 1589. Firing squad and a single bullet to the head are not the methods of execution authorized by Tennessee law.[2] Mem., R.55, 1589. While that alone isn't dispositive, it does factor into whether Tennessee can carry

---

[2] Nichols is half right that Tennessee can use "any constitutional method of execution," Stay-Br., Doc. 10, at 12, but only "[i]f lethal injection or electrocution is held to be unconstitutional" and the issue has traveled one of a few difficult procedural routes, Tenn. Code Ann. §40-23-114(d). That statute doesn't confer freewheeling discretion to adopt unauthorized methods.

out shooting executions "relatively easily and reasonably quickly" because adopting those methods would require "hastily amend[ing]" Tennessee's statutes. *Id.*

Moreover, neither method has ever been used in Tennessee. *Id.*, at 1590. While Nichols proposed protocols and alleged that Tennessee has the physical space (a firing range or a reconstruction of the lethal injection chamber), Compl., R.1, 25-26, that is only part of implementation. Mem., R.55, 1590. The district court could not "assume" from Nichols's threadbare allegation—that TDOC possesses "or could readily obtain, the firearms, ammunition, personnel, and training necessary" for those alternatives, Compl., R.1, 26-27—that TDOC actually could "find enough qualified persons" and train them to carry out Nichols's alternatives. Mem., R.55, 1590. "The reality is that formulating a new protocol and locating the people and resources necessary to carry out such an alternative ... would take considerable time and would, inevitably, lead to an entirely new round of legal challenges." *Arthur v. Cmm'r*, 840 F.3d 1268, 1219-20 (11th Cir. 2016). Nichols didn't show Tennessee could readily implement his proposed alternatives.

*Neither alternative will "significantly reduce a substantial risk of severe pain." Bucklew*, 587 U.S. at 143.  With respect to a firing squad, Nichols says only that it would "avoid the unnecessary and severe pain and suffering caused by" pentobarbital and "significantly reduce[] a substantial risk of severe pain when compared" to Tennessee's protocol. Compl., R.1, 27.  But he also acknowledges that "human error or mistake" can contribute to an "error rate in firing-squad executions," *id.* 27-28—the same type of risk Nichols alleges renders pentobarbital unlawful. Mem., R.55, 1591, n.40.

Nichols goes further for his single-bullet proposal, alleging it would "damage[] the brain stem, shutting down breathing and cardiac activity near instantly," before repeating his boilerplate allegations.  Compl., R.1, at 28.  But that doesn't "obviously or necessarily ... mean that the overall amount of suffering would be less."  Mem., R.55, 1592.

And for both proposals, Nichols isn't painting on a blank canvas. The Supreme Court has already suggested that lethal injection is a "more humane" method of execution than firing squad, though neither pose a constitutional problem.  *Barr*, 591 U.S. at 980; *Bucklew*, 587 U.S. at 134. Against that backdrop, Nichols failed to plausibly allege that his

proposals significantly reduce a substantial risk of severe pain as compared to pentobarbital.

Tennessee has "many legitimate reasons … not to adopt" Nichols's proposed alternatives. *Bucklew*, 587 U.S. at 134, 142. That Nichols's single-bullet proposal hasn't been adopted by any other State is alone enough to reject it. Tennessee need not "be the first to experiment with a new method." *Id.* at 142.

And even adoption of a method by another State isn't enough to force Tennessee's hand. An inmate must "point to a well-established scientific consensus" of pain reduction and show the "State refused to change its method in the face of such evidence." *Baze*, 553 U.S. at 67 (Alito, J., concurring). Only that type of refusal gives rise to the sort of "deliberate indifference" required to make out an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Nichols shows no such thing here.

## C. Nichols didn't show his unique physical conditions would cause him to suffer cruelly and unusually.

Nichols's as-applied claim also fails. This claim, like his facial claim, must clear the two-prong test for method-of-execution challenges. *Bucklew*, 587 U.S. at 140. It doesn't.

24

Under the first prong, the pain Nichols alleges to support his as-applied challenge isn't "objectively intolerable." *Glossip*, 576 U.S. at 877. Nichols says his medical conditions will make it harder to establish or maintain IV access, delay his execution, interfere with proper delivery of pentobarbital, and ultimately lead to "vein damage and leakage," "suffocat[ion]," and "a drowning sensation." Compl., R.1, at 19-20. But, as discussed, Nichols's pulmonary edema theory has already failed at the Supreme Court. *Supra* 18-20. And in the "context" of the "instructive example[]" of hanging—which was "evidently painful" and "caused death slowly," *Bucklew*, 587 U.S. at 132—the delay of establishing IV access or pain from vein damage is also not "constitutionally cognizable." *Ohio Execution Protocol Litigation*, 946 F.3d at 289-90.

Under the second prong, as the district court recognized, neither of Nichols's proposed alternative execution methods is "feasible and readily implemented." *Supra* 21-23.

## III. Equity Weighs Heavily Against a Stay.

None of the other stay factors favor Nichols.

The second factor—"irreparable harm absent a stay," *In re Black*, 148 F.4th at 381—cuts against relief. Of course, the death penalty is

irreversible. But Nichols's underlying suit doesn't seek to vacate his death sentence. It challenges the procedures for carrying out that penalty. So the only plausible irreparable harm here is the supposed "superaddition of … pain" from the use of pentobarbital instead of another execution method. *Bucklew*, 587 U.S. at 133. And, as discussed, Nichols failed to make a clear showing that pentobarbital superadds pain. The "possibility of pain" doesn't cut it. *Baze*, 553 U.S. at 61-62 (cleaned up); *see Hill*, 547 U.S. at 584; *Nelson*, 541 U.S. at 649-50.

The third factor—substantial harm to others—weighs heavily against a stay. The State and crime victims have a "powerful and legitimate interest in punishing the guilty." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (cleaned up). They also "have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 587 U.S. at 149 (cleaned up); *see* Tenn. Const. art. I, §35 (providing constitutional right to crime victims). "Only with an assurance of real finality can the State execute its moral judgment in a case" and "the victims of crime move forward knowing the moral judgment will be carried out." *Calderon*, 523 U.S. at 556. "To unsettle these expectations is to inflict a profound injury." *Id*.

26

And that injury is very real for Karen's family. When Nichols received his first reprieve due to COVID, Karen's sister, Lisette Monroe, lamented: "Don't you understand that my grieving doesn't stop for COVID, my re-traumatization doesn't stop." Eric Egan, *Murder Victim's Sister Will Fly to Tennessee to "Make Sure This Evil Man Dies*," WKRN.com, Oct. 15, 2020, https://perma.cc/7LGD-2RZ9. "Monroe has long said, with each anniversary, memory and image of her sister, and her murder, the emotion, the freshness of the pain returns, more so as Nichols'[s] death sentence is delayed. 'It's like reliving the actual event, over and over, and over,' she said." *Id.*

Finally, the fourth factor—the public interest—further tips the balance against a stay. "Nearly [36] years after [Nichols's] capital sentence and [two reprieves] later, both the state and the public have an interest in finality which, if not deserving of respect yet, may never receive respect." *Workman v. Bell*, 484 F.3d 837, 842 (6th Cir. 2007).

## CONCLUSION

Nichols's motions for a stay and injunction should be denied.

Respectfully Submitted,

Jonathan Skrmetti
  *Attorney General & Reporter*

J. Matthew Rice
  *Solicitor General*

*/s/ Cody N. Brandon*
Cody N. Brandon
  *Deputy Attorney General*

Nicholas W. Spangler
  *Special Counsel for Criminal Justice*

Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Cody.Brandon@ag.tn.gov
(615) 532-7400
  *Counsel for Appellees*

28

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations because it contains 5,185, excluding portions omitted from the Court's required word count.

This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/ Cody N. Brandon*
CODY N. BRANDON

## CERTIFICATE OF SERVICE

On December 4, 2025, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

*/s/ Cody N. Brandon*
CODY N. BRANDON
